UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBIN MARIE ROSARIO,

                Plaintiff,                6:18-cv-06252-MAT

    -v-                                              **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
_____

## INTRODUCTION

Robin Marie Rosario ("Plaintiff"), represented by counsel, brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded for further administrative proceedings and Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On December 29, 2014, Plaintiff protectively filed for DIB, alleging disability beginning October 2, 2014. Administrative

Transcript ("T.") 72. The claim was initially denied on April 17, 2015, and Plaintiff timely requested a hearing. T. 80-87. A hearing was conducted via video-conference on September 8, 2016, in Falls Church, Virginia by administrative law judge ("ALJ") Elizabeth Ebner. T. 37-71. Plaintiff appeared with her attorney and testified via video-conference from Rochester, New York. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on December 22, 2016. T. 12-26. Plaintiff timely appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on January 20, 2018, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2015. T. 17.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 2, 2014, through her date last insured. *Id*.

2

At step two, the ALJ determined that Plaintiff had the "severe" impairments of degenerative disc disease and arthritis. The ALJ noted that although there was some discrepancy in the record as to whether Plaintiff had rheumatoid arthritis, she nonetheless considered Plaintiff's joint impairments under the Listings for both rheumatoid arthritis and osteoarthritis. T. 17-18.

The ALJ also determined that Plaintiff's medically determinable impairments of carpal tunnel syndrome and left ulnar lesion did not have more than a minimal effect on her ability to perform basic work activities, and therefore were nonsevere. *Id*. However, the ALJ noted that the effects of Plaintiff's carpal tunnel syndrome and left ulnar lesion were considered along with the effects of her degenerative disc disease in determining whether or not it was a disabling factor. *Id*.

The ALJ further found Plaintiff's alleged impairments of attention deficit hyperactivity disorder ("ADHD"), neck pain, shoulder pain, and knee pain were not medically determinable impairments because the record did not contain the required supporting evidence. However, the ALJ noted that she considered Plaintiff's symptoms of neck pain, shoulder pain, and knee pain in conjunction with Plaintiff's severe impairments. T. 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint(s) (Due to Any Cause), 1.04 (Disorder(s) of the Spine), and 14.09 (Inflammatory Arthritis) in making this determination. T. 19.

Before proceeding to step four, the ALJ assessed that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with the following limitations: able to alternate between sitting and standing every thirty minutes without going off-task or leaving the work station; could reach overhead frequently; could climb ramps and stairs occasionally; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; could have no exposure to moving mechanical parts that are dangerous; could have no exposure to unprotected heights; could have occasional exposure to dust, odors, fumes, and pulmonary irritants; could have occasional exposure to vibration; and in addition to normal breaks, she would have had to be off-task ten percent of the time in an eight-hour workday, or 48 minutes of the day. *Id*.

4

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as an automobile detailer, automobile salesperson, cosmetics and toiletries salesperson, department manager, cashier, communication equipment sales representative, or courtesy booth cashier. T. 23.

At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age (43 years-old), education (high school equivalency diploma), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through her date last insured, including the representative occupations of machine tender and inspector. T. 25. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act, at any time from October 2, 2014, the alleged onset date, through March 31, 2015, the date last insured. T. 26.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial

evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted because the RFC finding is not supported by substantial evidence. In particular, Plaintiff argues that the ALJ (1) failed to support her RFC finding with any competent medical opinion and instead impermissibly relied upon her own lay interpretation of the medical evidence; and (2) failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Sheryl Holley, according to the treating physician rule.

For the reasons discussed below, the Court concludes that the ALJ failed to provide good reasons for discounting the RFC assessment provided by Plaintiff's treating physician, and that remand is therefore required.

I. **Plaintiff's Relevant Treatment Records**

In September 2012, Plaintiff underwent spinal fusion surgery, performed by Dr. Peter N. Capicotto. T. 380-82. At a follow-up appointment in April 2013, Plaintiff complained of ongoing neck pain and numbness in her hands. T. 286. Throughout 2013, 2014 and 2015, Plaintiff continued to complain of worsening back and neck pain to treating sources at both Dr. Capicotto's office and her primary care office, Unity Family Medicine at St. Bernards. *See* T. 303-416.

Specifically, Plaintiff complained of neck pain, with numbness and tingling in her fingers bilaterally, and exhibited a decreased range of motion in her neck on September 16, 2013. T. 341. On February 5, 2014, Dr. Holley noted Plaintiff's displaced cervical intervertebral disc condition was worsening. T. 325. That month, Plaintiff received two cervical epidural steroid injections for her pain. T. 398-99. On June 16, 2014, Plaintiff exhibited a painful range of motion in her lumbar spine. T. 311.

7

On November 13, 2014, Plaintiff complained of "fairly severe neck pain" and stated she had numbness and tingling and a sense of deadness in both arms when reaching behind her back. On examination, Plaintiff had a nearly full range of motion of her neck, full grip strength and intact sensation. At that time, Plaintiff's medications included Tramadol, and Cymbalta. A CT myelogram of Plaintiff's cervical spine and a repeat bilateral EMG study of the upper extremities was ordered. T. 333. The diagnostic testing revealed evidence of mild chronic right C7 radiculopathy, mild right and moderate left median neuropathy at the wrist (carpal tunnel syndrome), and mild left ulnar neuropathy at the elbow. T. 293.

On January 16, 2015, Dr. Capicotto examined Plaintiff for significant neck pain, occipital headaches, and numbness into her upper extremities. Dr. Capicotto recommended continued conservative treatment, including trying acupuncture or working with the Pain Clinic again. Dr. Capicotto noted the last option would be a decompression and fusion surgery. T. 331. In March 2015, Plaintiff received two sets of steroid injections at Rochester Pain Management. T. 448-51. In April 2015, Plaintiff complained of widespread pain and intermittent numbness and stated she was considering ablation in the future. T. 413.

On April 2, 2015, Plaintiff was treated for pain and swelling in her left elbow. She received a cortisone injection and was given an exercise plan to review with her personal trainer. T. 425. On April 24, 2015, Plaintiff expressed concern to Dr. Holley that she may have rheumatoid arthritis in her knee, elbow, and shoulder. T. 431. Dr. Holley assessed Plaintiff with poorly controlled osteoarthritis. T. 432.

On July 23, 2015 Plaintiff complained of continuing neck pain, occipital headaches and migraines, and intermittent numbness of her left hand. Plaintiff reported that steroid injections had increased her pain. On examination, Plaintiff exhibited a decreased range of motion in her neck. T. 476. Plaintiff reported she was trying to find an acupuncturist who would accept her insurance and that she did not wish to undergo any further invasive treatment or additional surgery for her persistent neck pain. T. 477.

**II. Opinion of Treating Physician, Dr. Sheryl R. Holley**

On June 20, 2016, Dr. Holley completed a medical source statement – the only functional assessment of record. T. 526-30. Dr. Holley opined that the maximum Plaintiff could sit continuously was 30 minutes to one hour before needing to get up and walk for less than 15 minutes before sitting again. She opined Plaintiff would be able to remain seated for a total of

9

three to four hours during an eight-hour workday, not including the time spent standing or walking. T. 526. Dr. Holley further opined Plaintiff could stand or walk continuously for up to 30 minutes at a time before needing to sit for 15 to 30 minutes. According to Dr. Holley, Plaintiff would be able to stand or walk for three to four hours total during an eight-hour workday and would require rest periods at approximately two-hour intervals throughout the workday to relieve pain and fatigue, in addition to a break in the morning, lunch period, and afternoon. T. 527-28. The rest periods should be two to four hours in length, with Plaintiff in a supine position. T. 528. Dr. Holley opined Plaintiff had the ability to "occasionally" lift 11 to 20 pounds and "rarely [if ever]" lift 21 to 50 pounds during a sustained eight-hour period. *Id*. Dr. Holley noted Plaintiff's impairments caused restrictions with heights, moving machinery, fumes, chemicals, noise, and vibration, although she provided no explanations for those restrictions. T. 529. The statement appears to indicate that Plaintiff's condition had existed since 2014. *Id*. Finally, Dr. Holley stated her assessment of Plaintiff's limitations were premised upon her diagnosis of rheumatoid arthritis and cervical stenosis. T. 530.

### III. The ALJ Failed to Properly Evaluate Dr. Holley's Medical Opinion (Plaintiff's Point II)

Plaintiff argues the ALJ failed to properly evaluate Dr. Holley's opinion pursuant to the treating physician rule. In particular, Plaintiff argues the ALJ failed to provide "good reasons" for not affording controlling weight to Dr. Holley's opinion.

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). Where a treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is generally entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). A corollary to the treating physician rule is the "good reasons rule," based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or

11

she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33. "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). "The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–45 (6th Cir. 2004) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)).

When determining the weight to afford a treating physician's opinion, the ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues". *Burgess v.*

12

*Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted).

In her decision, the ALJ accorded "some and not controlling" weight to Dr. Holley's opinion. T. 22. The ALJ did not recognize that Dr. Holley was Plaintiff's treating physician, but instead stated the obvious—that she is a "medical doctor." It is uncontested that Dr. Holley was Plaintiff's treating physician, and the record makes clear that Dr. Holley treated Plaintiff during the period that she alleged she was disabled. The ALJ then conclusorily stated that Dr. Holley's opinion was "inconsistent with [Plaintiff]'s repeated demonstrations of normal gait, station, strength, and sensation, as well as her indications that exercise and pain injections helped reduce her symptoms, and her statements regarding activities of daily living." T. 22. However, the ALJ did not provide any citations to the record or examples of the alleged inconsistencies. Nor did the ALJ acknowledge the numerous occasions on which Plaintiff's physical examinations were abnormal, with limitations in sensation and range of motion, as well as tenderness, swelling, and muscle spasms. This was improper. *See Delorenzo v. Colvin*, No. 6:15-cv-06532(MAT), 2016 WL 3639835, at *8 (W.D.N.Y. July 8, 2016) (ALJ improperly cherry-picked evidence from treating physician's treatment notes favoring a finding of not disabled); *Tim v. Colvin*, No. 6:12-CV-

1761 GLS/ESH, 2014 WL 838080, at *7 (N.D.N.Y. Mar. 4, 2014) (ALJ failed to comply with "good reasons" rule where the ALJ "cherry-picked evidence from [treating source]'s treatment records" and discredited the treating source's opinions regarding claimant's limitations, noting two isolated instances where the record failed to note symptoms, while ignoring all other instances where serious symptoms were documented).

Although Plaintiff's orthopedic surgeon Dr. Capicotto did not provide a medical source statement, the numerous and well-documented treatment records from his office support Dr. Holley's opinion. In a treatment note dated January 16, 2015, Dr. Capicotto noted that Plaintiff's pain symptoms "wax and wane" in intensity and that while it would be a last option, a second surgery would be justified. T. 331-32.

The ALJ also cherry-picked the record by essentially ignoring Plaintiff's prescribed pain medications in her decision. The ALJ noted only that Plaintiff received occasional steroid injections and was prescribed a magnetic collar, which she only used at night. T. 21-22. Yet, by Plaintiff's date last insured of March 31, 2015, Plaintiff was taking tramadol, Cymbalta, and gabapentin for her pain. T. 424. By the end of 2015, Plaintiff was also taking prednisone and meloxicam for her inflammation and arthritis pain. T. 499. These medications, in conjunction with

14

Plaintiff's repeated complaints of pain, steroid injections, and seeking alternative treatment such as acupuncture further support Dr. Holley's opinion. *See Davis v. Berryhill*, No. 16-CV-954-JWF, 2018 WL 4629126, at *4 (W.D.N.Y. Sept. 27, 2018) (ALJ improperly discounted opinions of plaintiff's treating doctor where the "dosage and frequency of [plaintiff's] medications clearly support[ed] plaintiff's claims of persistent and significant pain").

The reasons suggested by the Commissioner to justify the ALJ's decision constitute *post hoc* rationalizations for agency action not apparent from the face of the ALJ's decision which this Court may not accept. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). The ALJ's summary dismissal of Dr. Holley's opinion fails to meet the requirement that the ALJ "give good reasons" for not giving controlling weight to a treating physician. Reversal is therefore required. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (reversing for failure to provide good reasons for discounting treating physician opinion where ALJ did not identify the evidence supporting that finding, and did not explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to the opinion).

The Court finds that the ALJ failed to articulate good reasons for failing to afford controlling weight to the opinion of Plaintiff's treating physician, Dr. Holley, in violation of the treating physician rule. Accordingly, remand for proper consideration of Dr. Holley's medical opinion is warranted. The Court acknowledges that there is some lack of clarity as to the time-period covered by Dr. Holley's opinion and whether she diagnosed Plaintiff with osteoarthritis or rheumatoid arthritis. On remand, the Court directs Plaintiff's counsel to obtain the necessary clarification from Dr. Holley in order to assist in an expeditious completion of reconsidering Plaintiff's claim.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 7) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's opposing motion for judgement on the pleadings (Doc. 9) is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                S/Michael A. Telesca
                                _____
                                HONORABLE MICHAEL A. TELESCA
                                United States District Judge

Dated:    February 1, 2019
           Rochester, New York